## Hoffman's Petition.

*Practice, C. P.—Declaratory judgments—Parties—Uniform Declaratory Judgments Act of June 18, 1923.*

1. The 11th section of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, requires that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration."

2. A petition for a declaratory judgment as to the force and effect of a building restriction cannot be granted where it appears that some of the parties who would be interested and affected by the judgment have not been made parties to the proceeding or had any notice thereof.

*Deeds—Building restrictions—Private residence—Apartment-house.*

3. Where the deed to a lot in a community of expensive single dwelling-houses contains a building restriction to the effect that at no time shall any part of the premises be used for any other purpose than for private residence, the use, as an apartment-house, of any structure on the lot so restricted is a violation of the restriction.

Petition of Harry B. Hoffman for declaratory decree construing a building restriction in a deed, and rule on other parties in interest to show cause why such decree should not be entered. C. P. Montgomery Co., Nov. T., 1924, No. 59.

Before Miller, P. J., and Williams, J.

*Samuel L. Borton,* for petitioner.

*Frank A. Harrigan, William J. Conlen* (of *Conlen, Acker, Manning & Brown), Alfred R. Haig* and *Francis K. Swartley,* for respondents.

MILLER, P. J., April 11, 1925.—Nothwithstanding the revolutionary character of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, because, before its enactment, Pennsylvania courts have ever sat to decide and not to advise, we are inclined to dispose of this matter on its merits, if the same can be lawfully done. The Supreme Court has done the same (Aaron v. Woodcock [283 Pa. 33], decided at Pittsburgh on March 16, 1925); and many of the lower courts have entertained jurisdiction under the act, the constitutionality of which is not yet finally determined, but is squarely raised in this proceeding.

Willing as the court may be, however, thus to serve the petitioner in an advisory capacity, it is, unfortunately, met by an insurmountable difficulty at the very threshold of consideration of the case, which comes before it on a petition for relief and rule to show cause why it should not be granted.

It seems that petitioner owns an unimproved lot of ground at Merion, in this county, upon which he desires to erect an apartment-house. His premises are a part of a larger tract which some time ago was sub-divided by the then owner into many smaller tracts, all of which were conveyed by him subject to a common building restriction, which reads in part, "that at no time hereafter shall any part of the hereby granted premises be used for other purpose than for private residence, and any residence erected on any of said lots shall cost not less than $8000."

As a consequence, all the improvements which, up to the present time, have since been erected on parts of the original tract consist of single, private dwelling-houses of relatively great cost, and petitioner says that he "has been advised indirectly that certain people residing in the vicinity of his lot . . . will institute injunction proceedings against him as soon as he attempts to construct" the contemplated apartment-house. He, therefore, wants, in effect, to be advised whether or not it is safe for him to go ahead.

At the return of the rule granted, four of the defendants filed verified answers, and it was argued on petition and these answers. No replication was filed nor depositions taken, and, in the absence of any local rule on the subject, the relevant and material facts properly set up in the answers must be taken as true: Good v. Grit Pub. Co., 214 Pa. 614; German v. Conover, 240 Pa. 11.

Now, the Uniform Declaratory Judgments Act, in its 11th section, provides that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding" (see Schoen's Petition, 73 Pitts. L. J. 5) ; and section 6 of the act is careful to say that "the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

The petition names ten defendants as constituting "all the parties, grantees," of the prior owner of the whole tract who had created and imposed the building restriction, judicial construction of which is desired, while the answers aver affirmatively that such is not the fact; that there are at least three other interested parties who are not named at all and have had no notice of the proceeding; and that of the ten so named, one has been dead for eight or ten years and another had sold and conveyed away his property two or three years ago.

Moreover, as to the ten adverse parties named in the petition, the record does not show that four were served at all, but it does show that of these four, two have answered. Four parties who, so far as shown, have no interest in the matter were served, however, as was, according to the proof of service, the party who has been dead eight or ten years.

By the mere statement of the above facts, it is at once manifest that the petitioner is not entitled to the advisory declaration which he seeks. He has not brought himself within the requirements of the act, so far as they relate to necessary parties, and, therefore, asks us to do a vain thing. Such being the case, it becomes impossible to grant him the relief for which he prays and wholly unnecessary, therefore, to consider any of the many interesting questions raised. We cannot, because of lack of parties, avoid refusing to enter the declaratory decree he desires.

And now, April 11, 1925, rule discharged and petition dismissed without prejudice.

MILLER, P. J., June 29, 1925.—The petitioner has recently acquired a lot of ground at Merion, in Montgomery County. It is located near the centre of this highly-improved community, which contains no stores, industrial plants nor other alleged objectionable establishments, and consists exclusively of many very expensive single dwelling-houses, each of which is used for private residence only by its owner or tenant.

The whole neighborhood is protected by severe building restrictions or covenants which were imposed years ago by a common owner. They are practically similar, and that appearing in petitioner's deed reads, in part, "that at no time hereafter shall any part of the hereby granted premises be used for other purpose than for private residence and any residence erected on any of said lots shall cost not less than $8000 and the front line thereof shall be at least 75 feet from the middle line of the road on which said residence fronts."

The petitioner desires to erect an apartment-house on his lot. The structure contemplated is, as we understand it, an ordinary one of this character to be operated for profit, or as a business enterprise, and intended to be occupied by a large number of tenants, each of whom will rent a suite of apartments therein for use by himself and family for private residence. It will have a common dining-room and other utilities, but will not be used as a hotel for the accommodation of transient guests. His neighbors object to its erection.

As a consequence, and to the same term and number, Mr. Hoffman, being unwilling to incur the expense incident to an assertion in the usual way of his claimed right, on Nov. 29, 1924, came in with a petition similar to the one now before us. It was, after hearing, dismissed without prejudice for lack of necessary parties. He afterward filed the present petition on which the customary rule was granted. It was stated at the argument that all interested parties now want decided the question involved. No objection is made to our jurisdiction; no point is made that all interested parties are not before the court; the constitutionality of the Uniform Declaratory Judgments Act of 1923 is waived; and those who have answered join in petitioner's prayer for our construction of the restriction in question. We have, therefore, decided to entertain jurisdiction and find the single and narrow disputed question in the case to be whether or not the use as an apartment-house of the structure contemplated, if and when erected, will be violative by the petitioner of the restriction in his deed.

In our opinion, it will. There is nothing in the restriction that forbids the erection of an apartment-house, because it does not concern the character of the structure. It is, to the contrary, directed only to the future use of the premises. In other words, the petitioner can safely build an apartment-house, so long as it is, after completion, used only as a private residence. Had the article "A" appeared before "private residence" in the restriction, there would be no doubt on the question. That the restriction was intended by the parties to have the same meaning, even in the absence of this letter, is implied not only by that which follows, to wit, "And any residence erected . . . shall cost not less than $8000," and the phrase "said residence," but also by the use of the word "private." An apartment-house is not a private residence, nor is the occupant of such in private residence. One who lives at a hotel may have the utmost privacy in the seclusion of his own room, but it would be idle to contend that he resided privately in that room  Apartment-houses and hotels are quasi-public places. The larger they are, the greater the comings and goings of people and traffic about them. "Private residence" implies a self-contained and independently managed establishment to be used by a single family unit. As we understand it, the term is almost equivalent to "home," a place where a single individual or family resides alone.

As was said by Mr. Justice Kephart in the similar case of Taylor et al. v. Lambert, 279 Pa. 514, "the word 'private' further restricts the buildings to be placed thereon by excluding all such as are used for residential purposes of a public character, like hotels and general public boarding or apartment-houses. An apartment-house is not a number of private dwellings, built one upon another, but a collection of dwellings objectionable to the restriction, which calls for a single dwelling. . . . An apartment-house is not strictly a private dwelling; it is a place for housing a number of people grouped in families assigned to different sections in the same structure. Carried to its logical conclusion (as the size increases, so does the population), it would embrace a building twenty stories high or forty stories high. Ordinarily,

Hoffman's Petition.

every one knows the difference between a private dwelling-house and an apartment-house." He says also that "there is a well-defined difference between an apartment-house operated by the owner for profit through leasing different stories or suites of rooms and a dwelling intended and calculated to be for the sole and exclusive occupancy of one family, suitably constructed for that purpose." Moreover, and as indicated in the case just cited, the phrases "private dwelling-house" and "private residence" are practically synonymous. In view of the case just cited, it is felt to be unnecessary to say more.

After hearing and mature consideration, we, therefore, declare and advise, as a declaratory judgment or decree, that, in our opinion, the restriction in petitioner's deed prohibits use of any structure hereafter erected on his premises as an apartment-house. The costs of this proceeding to be paid by the petitioner.

From Aaron S. Swartz, Jr., Norristown, Pa.