# Mauser, Appellant, *v.* Mauser.

*Divorce—Jurisdiction—Residence in county.*

1. An averment in a libel for divorce that the libelant was a resident of the county in which the libel was filed does not stand on any higher plane as to conclusiveness than any other essential averment, therefore, it does not preclude the court from dismissing the libel if, upon hearing, it is shown that the libelant was not a bona fide resident of the county.

2. The Act of May 9, 1913, P. L. 191, does not abrogate the provision of the Act of March 13, 1815, that a libel in divorce shall be exhibited in the county where the injured party resides.

3. A libel in divorce will be dismissed because of the nonresidence of the libelant in the county in which the libel is filed, where it is shown that the libelant had no room or dwelling in the county other than he stopped one night at a hotel, without even registering, that he was not engaged in any business in the county, and never announced any intention to make the county his home.

Argued Nov. 18, 1914. Appeal, No. 38, Oct. T., 1914, by plaintiff, from decree of C. P. Bradford Co., Sept. T., 1913, No. 361, dismissing libel in divorce in case of William H. Mauser v. Catherine Mauser. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Affirmed.

Libel in divorce.

Maxwell, P. J., filed the following opinion:

Subpœna in divorce issued August 26, 1913, returnable to the second Monday of October, 1913.

Said subpœna served, personally, upon respondent, at Danville, Pa., August 30, 1913.

The alleged cause for the divorce as set out in the libel, is as follows:

"The said Catherine Mauser from the 15th day of May A. D., 1912, hath offered such indignities to the person of the libelant as to render the condition of libelant intolerable, and life burdensome, and thereby compelled him to withdraw from his home and family."

It is further alleged in said libel, that the libelant is a citizen of the commonwealth of Pennsylvania, and of the county of Bradford, and hath resided in said commonwealth for a period of one whole year and upwards, previous to the filing of this his petition or libel.

Said petition was sworn to, on August 26, 1913, and filed on August 26, 1913.

While the date when the petition was sworn to, does not appear in the certificates of the justice of the peace, yet we think it would be fair to presume that it was sworn to, either previous to, or on the date the said petition or libel, was filed.

The important question in this case, is the jurisdiction of the court, to entertain this proceeding.

By the second section of the act of March 13, 1815, the injured party may exhibit his or her petition or libel, to the judges of the court of common pleas of the proper county, where such injured party resides, and shall exhibit an affidavit, taken before one of the judges, or a justice of the peace of the proper county, etc.

The letter and spirit of this act, is plain, that the application must be made in the county where the injured party resides.

"A decree of absolute divorce will be vacated for want of jurisdiction, on motion of the respondent, where it is shown that the libelant did not reside in the county where the divorce was granted, although the divorce had been granted more than thirty years

ago and the libelant had been dead for many years:"
Gambe v. Gambe, 22 Pa. C. C. Rep. 23.

"The provisions of the act of March 13, 1815, that
a libel in divorce should be exhibited in the county
where the injured party resides, are mandatory and
not directory, and the libel cannot, therefore, be ex-
hibited in any other county:" Chiumento v. Chiumento,
34 Pa. C. C. Rep. 320; Sherwood's Appeal, 17 W. N. C.
338.

"A divorce will not be granted where the evidence
shows that the libelant is actually living in another
county, although she makes claim that the county of
the forum is her legal domicile:" Askew v. Askew; 34
Pa. C. C. Rep. 397.

The evidence in the case at bar was taken at To-
wanda, Pa., on October 14, 1913, before I. McPherson,
Esq., special master and examiner.

Respondent did not appear, either personally, or by
attorney.

The only evidence in the depositions that were taken,
on October 14, 1913, that bears on the residence of
libelant at the time he filed the libel in this case, is his
own testimony, and is as follows:

"Q. Mr. Mauser, where do you reside? A. Towanda,
Pa. Q. Where, at Towanda? A. Hotel Platt."

He further testified, that he was married to respond-
ent at Danville, Pa., on March 15, 1911, and at that
time, he and his wife were both residents of Danville,
Pa. That shortly after their marriage, they commenced
keeping house in Danville, Pa., when one child was
born to this marriage, which later, died. They con-
tinued to live together until August 13, 1913, when
she left his house and home, and went to her mother's
home, who lived four doors away from where the
libelant lived. That libelant's children, by a former
wife, are living with his mother at Danville, Pa. That
his, the libelant's business, is that of motorman, and
he has followed that for about six years.

Ruth M. Mauser was called as a witness and sworn on behalf of libelant. She testified in part, that she was fourteen years old, and resided at Danville, Pa.

She further testified that she came to Towanda, on the day she testified, with her father.

Other witnesses from Danville, Pa., were called and testified to conduct of respondent, and of libelant.

The master, in his report, recommended a decree of divorce.

When this case was presented to the court, and after reading the testimony, we suggested to counsel that we were not satisfied that the residence of the libelant was in Bradford county, at the time he filed his libel in this case. Some time later, counsel for libelant took the deposition of Thomas Crotty, and asked to have it attached to the evidence previously taken in this case, which we permitted. This evidence was for the purpose of establishing the residence of the libelant in Bradford county, and in part is as follows:

"Q. Mr. Crotty, where do you reside? A. In Towanda, Pa. Q. What is your business? A. Hotel business. Q. Have you charge of a hotel here in Towanda? A. Yes, sir. Q. What hotel is it? A. Tidd House. Q. Do you recall of meeting a man by the name of William H. Mauser? A. Yes, sir. Q. About when? A. Along the latter part of August. Q. Through whom did you meet him? A. David E. Kaufman. Q. Did he stop at your hotel at that time? A. Yes, sir. Q. Does his name appear upon your register as staying there the night of August 25? A. The register does not show it but I recall of him being there that night; that is, it was the latter part of August, and I remember you brought him there."

This is all the testimony there is, bearing upon the question of the residence of the libelant. There is no dispute but what the libelant is a bona fide resident of the state of Pennsylvania, and has been a resident for more than one year previous to the filing of his

libel, but the evidence discloses that the libelant's residence was in Danville on August 13, 1913, when his wife left him. That his mother lives in Danville, his daughter by the former wife lives with her grandmother in Danville.

That there is no trolley line in Towanda, where the libelant could be employed.

We think, that in order to give the court of this county jurisdiction to entertain the proceedings in the case at bar, the libelant must have become a bona fide resident of the county of Bradford at some time however short, before the filing of his libel, or petition in this case. While residence is a matter of intention, yet we think there should appear sufficient facts and circumstances to warrant the court in believing that the residence of the libelant in the county where the libel is presented, was bona fide, and in good faith.

In the case at bar, the libelant has not even testified that he intended to make Towanda his home, at any time. He was not engaged in any business at Towanda, Pa. He had no room, or dwelling, other than he stopped one night at a hotel, paid his bill, presumably for the time he occupied it, and for the meals that were furnished him. He testified that his residence was at Towanda, Pa., and when asked where it was, he gave the Platt Hotel as his place of residence, and when his deposition was subsequently taken, he showed by Thomas Crotty, that some time the latter part of August he stayed one night at the Tidd Hotel, and this was so casual, that his name did not even appear on the hotel register.

So that, taking all the facts and circumstances we are not convinced that the libelant has a bona fide residence in Bradford county, Pa., and that he did not have such a residence at the time he filed the libel, in this case, on August 26, 1913.

We think the fact that the subpœna of divorce in this case was served, personally, upon the respondent

at Danville, Pa., would not give the court jurisdiction.

"The consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce, based on the allegations of cruel and barbarous treatment, or of indignities to the person, unless the libelant should have resided in the state at least one whole year previous to the filing of his or her petition or libel.    This prerequisite is not in the nature of a personal privilege or safeguard which the respondent may waive, or the court, in its discretion, dispense with:" English v. English, 19 Pa. Superior Ct. 586.

Our attention has been called, by counsel, to the Act of Assembly approved May 9, 1913, P. L. 181, and we have considered this act, and are of the opinion that so far as this question is concerned that we are considering, it has no application whatever, and it is therefore, not necessary to discuss this act further.

We have not considered the merits of the case, only so far as they relate to the question of jurisdiction, and we are of the opinion that this court is without jurisdiction.

The findings of the master are disapproved, and the libel is dismissed at the costs of the libelant, January 17, 1914.

*Error assigned* was decree dismissing the libel.

*J. Roy Lilley,* with him *David E. Kaufman,* for appellant.—The libel is a part of the pleadings, the pleadings a part of the record, and as the averment of the libel is that libelant is a resident of the county of Bradford, it follows that the jurisdiction of the court below on that question was apparent as matter of record: Gambe v. Gambe, 22 Pa. C. C. Rep. 23; Gould v. Gould, 14 Pa. C. C. Rep. 185.

Jurisdiction both of the parties and of the subject-

matter appeared as matter of record, and it was error to disregard the record and dismiss the libel: Commonwealth v. Barnett, 199 Pa. 161; Lewisburg Bridge Co. v. Un. & North'd Co.'s, 232 Pa. 255; English v. English, 19 Pa. Superior Ct. 586.

No printed brief for appellee.

Opinion by Rice, P. J., February 24, 1915:

1. The ground upon which the court based its decree dismissing the libel in this case was that the libelant was not a bona fide resident of the county of Bradford at the time it was filed, but that he and the libelee were domiciled and resident in Montour county. True, the libel, which was sworn to, asserts "that he is a citizen of the commonwealth of Pennsylvania, and county of Bradford, and hath resided in the said commonwealth for the period of one whole year and upwards previous to the filing of this his petition or libel." Even if it be conceded that this averment was sufficient, prima facie, to give the court jurisdiction to entertain the libel, it does not stand on any higher plane as to conclusiveness than any other essential averment, and, therefore, it did not preclude the court from dismissing the libel if, upon hearing, it was shown the libelant was not a bona fide resident of the county. The evidence given on the hearing is recited in the opinion filed by the learned judge, and need not be restated. In our judgment it amply sustains his finding of fact. His legal conclusion, that under sec. 2 of the act of 1815 the court of Bradford county did not have jurisdiction, necessarily and logically follows. The question is not complicated by appearance and answer of the libelee, and the case is plainly distinguishable in its essential facts from Ames v. Ames, 7 Pa. Superior Ct. 456. The decision was in exact accord with Sherwood's App., 17 W. N. C. 338, s. c. Sadler's Reps. 497.

2. It is claimed that the provision of the act of 1815

to which we have referred was abrogated by the Act of May 9, 1913, P. L. 191, and therefore now the libelant may present his or her libel to any court of common pleas of the commonwealth. The language of the act of 1913, "That the several courts of common pleas shall have jurisdiction in any action of divorce," is similar in import to the language of the act of April 26, 1850, "The jurisdiction of the several courts of common pleas shall hereafter extend," to the language of the act of May 8, 1854, "it shall be lawful for the courts of common pleas of this commonwealth to grant divorces," and to the language of the act of March 9, 1855, "it shall be lawful for the several courts of common pleas in this commonwealth to entertain jurisdiction of all cases of divorce from the bonds of matrimony." Such expressions, which very frequently appear in statutes, are used to designate the common pleas as distinguished from other courts of the commonwealth, and not with a view of abrogating common-law distinctions between local and transitory actions or statutory regulations designating, according to the residence of one or both of the parties, the particular court of common pleas in which a proceeding shall be instituted. Clearly, this language does not compel the conclusion for which counsel for appellant contend.

Allusion is made by them to the provision of sec. 2 of the act of 1913 relative to residence of one year in the commonwealth. If this section stood alone there would be considerable force in the appellant's argument that residence in the county where the petition is presented is not an essential. But the section does not stand alone. It is part of the general system of laws relating to divorce, and it is a familiar principle that statutes in pari materia, though passed at different sessions of the legislature, are to be construed together and so as to give effect to them all, if that be possible. If the later statute contains no repealing clause and its provisions are not irreconcilable with the provisions of a former

statute belonging to the system of laws relating to the same general subject, it will not, in general, be deemed to repeal it. There is no inconsistency between the provision of the act of 1913 and the provision of the act of 1815. Both are to be regarded, and, as there is no express repeal and no clear intention of repeal, we hold that the latter provision was not abrogated.

The decree is affirmed at the costs of the appellant.